J. S41024/16

2016 PA Super 201

COMMONWEALTH OF PENNSYLVANIA, : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
MYRON PUKOWSKY, :
Appellant :
: No. 3097 EDA 2015

Appeal from the Judgment of Sentence December 5, 2014,
In the Court of Common Pleas of Montgomery County
Criminal Division No(s): CP-46-CR-0003452-2013

BEFORE: BENDER, P.J.E., DUBOW, J., and STEVENS, P.J.E.[*]

OPINION BY DUBOW, J.:                          **FILED SEPTEMBER 08, 2016**

Appellant, Myron Pukowsky, appeals from the December 5, 2014

Judgment of Sentence entered in the Montgomery County Court of Common

Pleas. After careful review, we conclude that the trial court did not abuse its

discretion in finding the minor victim competent to testify and in finding that

letters written by Appellant to his daughter were not subject to the

psychotherapist-patient privilege. We also conclude that Appellant waived

his third allegation of error by failing to raise it with sufficient specificity in

his Pa.R.A.P. 1925(b) Statement. We, therefore, affirm.

The trial court stated the relevant facts and procedural history as

follows:

L.P. is [Appellant's] daughter. Back in November 2007, when
L.P. was five-years-old, she lived in Royersford, Montgomery

_____

[*] Former Justice specially assigned to the Superior Court.

County, with her mother, A.B., and her younger brother. [Appellant] had lived in the home with the family as well, but at the time was residing in a drug and alcohol rehabilitation center.

A.B. had to travel to Virginia for a few days for work. Beth Ann Fisher, who lived with her family across the street from L.P., agreed to watch her and her younger brother.

One evening during dinner, L.P. told Fisher that her father had "dirty hands" and that he put his hands in her pants. Fisher eventually telephoned A.B., who returned from Virginia and made arrangements for L.P. to meet with psychotherapist Laura Weissflog. Weissflog met with L.P. and recorded an interview with the child. A report subsequently was made to the Montgomery County Office of Children and Youth ("OCY").

Elaine Reape, a supervisor with the Montgomery County Office of Children and Youth, eventually spoke with L.P. The child stated that [Appellant] had touched her "bum" while they lived in Philadelphia and touched her "fanny" on more than one occasion at the Royersford home.

A.B. subsequently had a conversation with L.P. during which A.B. asked if [Appellant] had touched her. L.P. said [Appellant] had touched the inside and outside of her "fandango," which A.B. said is a term L.P. had used to describe her vaginal area. She indicated the touching had occurred on more than one occasion at the home in Royersford, as well as in the family's prior residence in Philadelphia.

[Appellant], who had since returned from the rehabilitation facility, did not go back to live at the Royersford home; he instead took up residence at a nearby hotel. He also began sessions with psychologist John Gentry. A.B. attended some of the sessions at the request of [Appellant's] family, but she eventually stopped going because it was too emotionally traumatic.

[At the suggestion of Dr. Gentry, Appellant] drafted a letter he planned to give to L.P., apologizing to her and explaining that at the time he touched her he was dealing with alcohol and drug issues. It does not appear that he ever gave the letter to the child.

Charges were not filed against [Appellant] in the wake of the 2007 allegations. [Appellant] did not return to live with the family at the Royersford home and over time fell out of contact with them.

A.B.'s new boyfriend eventually began living with her and her children. In March 2013, while cleaning out a bedroom in the Royersford home in anticipation of the boyfriend's son coming to live with them, the son found an envelope on a bookshelf among a pile of books and paperwork [Appellant] had left behind. The son gave the envelope to A.B. The envelope[] contained the letter[s] [Appellant] had drafted to L.P. back when he was in therapy with Dr. Gentry, as well as what appeared to be a draft version. A.B. knew there had been some discussions during the therapy about [Appellant] writing the letter, but had never seen it before.

[Appellant] subsequently was charged with three counts of unlawful contact with minor, three counts of aggravated indecent assault, one count of endangering the welfare of a child, three counts of indecent assault of a person less than 13 and one count of corruption of minors. He filed a pre-trial motion for competency hearing, claiming L.P.'s recollections of the minor victim had been tainted by her conversations with adults. He sought to bar testimony from L.P. and the adults who had spoken with her about the incidents. He also moved to suppress the letters on the ground they were prepared in connection with his therapy with Dr. Gentry. [The trial court] denied the motions after a hearing.

The matter proceeded to a jury trial at which Weissflog, Fisher, A.B., L.P. and Reape testified for the Commonwealth and Dr. Gentry testified for the defense. The jury found [Appellant] guilty of two counts of aggravated indecent assault, two counts of indecent assault of a person less than 13 and corruption of minors.

[Appellant] subsequently became represented by new counsel and was sentenced in open court on December 5, 2014. The record from the sentencing hearing indicates that [Appellant] was advised of his post- sentence rights. He did not file a post - sentence motion. He filed a notice of appeal on January 6, 2015, which the Pennsylvania Superior Court quashed as untimely.

- 3 -

On July 22, 2015, [Appellant] filed a Post Conviction Relief Act Petition for Allowance of Appeal *Nunc Pro Tunc*. The Superior Court remitted the record on September 11, 2015. [The trial court] subsequently granted [Appellant's] petition and he filed a notice of appeal *nunc pro tunc*. He then complied with this court's directive to produce a concise statement of errors in accordance with Pennsylvania Rule of Appellate Procedure 1925(b).

Pa.R.A.P. 1925(a) Opinion, dated 12/9/15, at 1-4 (footnotes omitted).

In his Brief to this Court, Appellant raises the following three issues in the Statement of Questions Involved:

1. Did the trial court err when it ruled that the testimony of the victim was not tainted by the person who first heard her complaint, Beth Anne Fisher, and the person who conducted her first interview, Laura Weissflog?

2. Did the trial court err when it ruled that letters penned by the defendant at his treating psychologist's request were not protected by privilege, where no explicit waiver of the privilege was executed?

3. Did the court err in limiting the testimony of Dr. John Gentry, where he was offerring (sic) factual, non-expert testimony?

Appellant's Brief at 6.

Each of Appellant's allegations of error challenge the admission of evidence at trial. "Questions regarding the admission of evidence are left to the sound discretion of the trial court, and we, as an appellate court, will not disturb the trial court's rulings regarding the admissibility of evidence absent an abuse of that discretion." **Commonwealth v. Russell**, 938 A.2d 1082, 1091 (Pa. Super. 2007) (citation omitted). An abuse of discretion is more than a mere error of judgment; rather, an abuse of discretion will be found when "the law is overridden or misapplied, or the judgment exercised is

manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record." ***Commonwealth v. Busanet,*** 817 A.2d 1060, 1076 (Pa. 2002) (citation and quotation omitted).

### Testimony of L.P.

In his first issue, Appellant alleges the trial court erred in permitting the victim, L.P., to testify over Appellant's objection because her testimony had been tainted by the adults to whom she had initially disclosed the abuse. Specifically, Appellant alleges that the bias of L.P.'s mother, the bias of Fisher, and the "guided and suggestive" questioning by Weissflog each tainted L.P.'s testimony, rendering her incompetent to testify. Appellant's Brief at 14-20.

As with other evidentiary rulings, "the determination of competency is a matter for the sound discretion of the trial court, which will not be disturbed absent a clear abuse of that discretion." ***Commonwealth v. D.J.A.***, 800 A.2d 965, 970 (Pa. Super. 2002). As the trial court noted in its Rule 1925(a) Opinion and at the hearing on L.P.'s competence:

> Before a witness under the age of 14 may testify, Pennsylvania requires the examination of the witness for competency. ***See Commonwealth v. Moore***, 980 A.2d 647, 649-50 (Pa. Super. 2009). When faced with a claim that a child victim is not competent to testify because her recollections may have been tainted; trial courts should conduct an inquiry into whether the child has an independent memory of the event. ***Commonwealth v. Delbridge***, 855 A.2d 27 (Pa. 2003). That inquiry should focus on "the mental capacity to observe the occurrence itself and the capacity of remembering what it is that [the witness] is called upon to testify about." ***Id.*** at 40 (citation omitted). The party alleging a child victim's memories have

been tainted carries the burden of producing evidence and the burden of proof by clear and convincing evidence. *Id.*

Defendant alleged in a pre-trial motion for a competency hearing that L.P.'s recollections had been tainted because the incidents occurred during a period of marital stress between himself and A.B. He also argued that L.P.'s memories had been tainted by discussions she had with A.B., Officer O'Keefe, Weissflog and Elaine Reape.

This court conducted a hearing at which Beth Ann Fisher, Reape and A.B. testified. Following their testimony, this court made the following determination, which it incorporates here by reference:

> [Appellant] has failed to demonstrate evidence of taint that would render the victim incompetent to testify.
>
> The Court has reviewed the circumstances surrounding the revelation--the totality of the circumstances surrounding the revelation of the allegations of sexual abuse, including the manner the victim's alleged allegations of abuse surfaced and were investigated.
>
> The Court finds that the testimony of the neighbor, Beth Ann Fisher, was credible regarding the victim's revelation of sexual abuse and that Ms. Fisher's subsequent—and the spontaneity of that response— or that revelation and comment by the victim and the subsequent conversations that Ms. Fisher had with the victim about the revelation of sexual abuse I felt was free from any type of corruption, suggestiveness or coerciveness of the victim's memory of the abuse.
>
> The Court finds the same is true of the discussion the victim's mother, [A.B.], had with her upon hearing the revelation of sexual abuse from Ms. [Fisher].
>
> I did not hear any testimony about the volatility of their relationship or any factors about anything more than they were in the process of divorce litigation

- 6 -

that would in any way, shape or for[m] taint the testimony of the alleged victim.

The fact that they are in divorce litigation and the fact that [A.B.] was a victim of sexual abuse herself in no way caused [A.B.] to implant any kind of false memories or distortions or the real memories of her daughter regarding the alleged sexual abuse by the defendant that would in any way, shape or form render this alleged victim incompetent to testify. That was never even--we don't even know what type of sexual abuse--sexual abuse in and of itself in my mind doesn't taint the testimony of the alleged victim, the mother's sexual abuse, having been a victim of sexual abuse.

The Court also finds that the interview techniques of Ms. Weissflog, although this might be--she is not the most proficient in what she is doing, she certainly has the education and has a master's--the focus of her master's was in dealing with children that are victims of alleged sexual abuse.

I agree with the Commonwealth that the question was not a leading question, but a direct question. I don't think they were suggestive or coercive questions to the victim that tainted her testimony or corrupted her testimony or responses in any way, shape or form.

I felt actually after reviewing the video and reading the transcript that Ms. Weissflog's questioning of the victim was rather gentle, open-ended, and appropriate. She is five years old.

And certainly, if there were any mild taint at all, as Mr. Kravitz argues, or if you could characterize it that way, it is not enough to render her incompetent to testify.

So the Court finds that the alleged victim is competent to testify. There is no—her testimony was not tainted in any way, shape or form.

Trial Court Opinion, filed 12/10/15, at 7-9 (quoting N.T., 4/7/14, at 73-76).

After a careful review of the record, and under our standard of review, we conclude that the trial court did not abuse its discretion in finding L.P. competent to testify at trial.

## Appellant's Letters to L.P.

Appellant next contends that the trial court erred in admitting into evidence the letters he prepared apologizing to L.P. because, Appellant avers, those letters were protected by psychologist-patient privilege. Because we conclude that the letters were not a confidential communication from Appellant to his psychologist, we find Appellant is not entitled to relief on this claim.

The legislature has codified the basic rule governing the psychologist-patient privilege as follows:

> No psychiatrist or person who has been licensed . . . to practice psychology shall be, without the written consent of his client, examined in any civil or criminal matter as to any information acquired in the course of his professional services in behalf of such client. The confidential relations and communications between a psychologist or psychiatrist and his client shall be on the same basis as those provided or prescribed by law between an attorney and client.

42 Pa.C.S. § 5944. *See also* Daniel J. Anders, Ohlbaum on the Pennsylvania Rules of Evidence §§ 501.06, 501.14 (2016 ed. LexisNexis Matthew Bender).

The privilege acts to bar testimony by the treating psychologist or psychiatrist, as well as the disclosure of certain records. *Commonwealth v. Smith*, 606 A.2d 939, 941-42 (Pa. Super. 1992). While documents

prepared during the course of treatment may sometimes fall within the privilege, Section 5944 "pertains only to confidential communications between psychiatrists or psychologists and their patients/clients that were made in the course of treatment, not to all records and documents regarding mental health treatment." *Gormley v. Edgar*, 995 A.2d 1197, 1204 (Pa. Super. 2010). This Court has previously held that the privilege codified in Section 5944 does not extend to reports or other documents that "do not contain any communications" made by to patient to the psychotherapist. *Gates v. Gates*, 967 A.2d 1024, 1029 (Pa. Super. 2009). In evaluating whether the privilege should apply to certain statements, courts must look to "the purpose and circumstances under which the declarant made them." *In re T.B.*, 75 A.3d 485, 496 (Pa. Super. 2013).

In the instant case, Appellant presented no evidence showing that Appellant intended the letters to be a confidential communication from Appellant to his psychotherapist, Dr. Gentry. Instead, the testimony clearly indicated that sharing the letters with Dr. Gentry was incidental to Appellant's true purpose in writing them: to communicate with the victim as a means of apology and an attempt at reconciliation. N.T., 4/7/14, at 35, 40, 45, 48.

Although Dr. Gentry read and wrote comments on at least one draft of the letter, there is no evidence suggesting Dr. Gentry was the intended recipient of the letter. Rather, Appellant shared the letters with Dr. Gentry

so that he might proofread them and help Appellant better express his feelings to the victim. N.T., 4/7/14, at 35, 45, 47. In fact, the final draft of the letter, which Appellant abandoned in the victim's home, was never even shown to Dr. Gentry. N.T., 4/7/14, at 36.

In his Brief to this Court, Appellant concedes that "[t]he purpose of the letter [was] to present it to [L.P.]." Appellant's Brief at 22. We do not read Section 5944 to be so expansive as to permit Appellant to make otherwise unprivileged communications privileged by submitting them to his psychotherapist for edits. Following our guidance in *In re T.B.*, and under these facts, we conclude that the letters were not prepared with the purpose of making a confidential communication to a psychotherapist and do not fall within the privilege. *In re T.B., supra* at 496. Therefore, we conclude that the trial court did not err in admitting the letters into evidence.

## The Testimony of Dr. Gentry

In his third issue, Appellant avers that the trial court erred in limiting the testimony of defense witness Dr. John Gentry. As Appellant's Pa.R.A.P. 1925(b) Statement is impermissibly vague, we find this argument waived.

An appellant's Rule 1925(b) Statement "shall concisely identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge." Pa.R.A.P. 1925(b)(4)(ii). A Rule 1925(b) statement "which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no [Rule 1925(b)]

J.S41024/16

Statement at all," and will result in waiver. *Lineberger v. Wyeth*, 894 A.2d 141, 148 (Pa. Super. 2006).

In his Rule 1925(b) Statement, Appellant stated the alleged error regarding Dr. Gentry's testimony as follows:

The Court erred in limiting the testimony of Appellant's treating physician, as both a fact witness and an expert witness. Said limitations were highly prejudicial to Appellant, and violative of his due process rights.

Pa.R.A.P. 1925(b), filed 1/27/15, at 2.[1]

As the trial court so aptly explained:

[Appellant's Rule 1925(b) Statement] does not inform this court with any specificity about the portion of Dr. Gentry's testimony that was improperly limited. The Commonwealth raised several objections during Dr. Gentry's testimony, some of which were sustained. This court should not have to guess as to which objection or objections [Appellant] is referring.

Trial Court Opinion, filed 12/10/15, at 12.

We are in agreement with the trial court, and conclude that Appellant waived this claim by failing to state it with sufficient specificity.

Having concluded that Appellant is not entitled to relief on any of the issues raised, we affirm the December 5, 2014 Judgment of Sentence.

Judgment of Sentence Affirmed. Jurisdiction relinquished.

President Judge Emeritus Bender joins the opinion.

---

[1] Presumably recognizing that (i) Dr. Gentry is not a physician and (ii) Appellant never offered him as an expert witness, Appellant reframed the issue slightly in his Brief to this Court. *See* Appellant's Brief at 6 (asking "[d]id the trial court err in limiting the testimony of Dr. John Gentry, where he was offering factual, non-expert testimony?").

- 11 -

President Judge Emeritus Stevens Concurs in Result.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/8/2016