J-A08018-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: N.B., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: N.B., A MINOR | No. 2952 EDA 2016 |

Appeal from the Dispositional Order August 19, 2016
In the Court of Common Pleas of Monroe County
Juvenile Division at No(s): CP-45-JV-0000171-2015,
CP-45-JV-0000172-2015

BEFORE: PANELLA, J., LAZARUS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LAZARUS, J.:                    **FILED MAY 12, 2017**

N.B. appeals from the trial court's order denying his post-dispositional motion following his adjudication of delinquency for rape of a child under 13 years of age,[1] involuntary deviate sexual intercourse with a child under the age of 13,[2] aggravated indecent assault,[3] sexual assault,[4] indecent assault,[5] and indecent exposure[6] in CP-45-JV-0000171-2015 ("Case 171" (female

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. § 3121(c).

[2] 18 Pa.C.S. § 3123(b).

[3] 18 Pa.C.S. § 3125(b).

[4] 18 Pa.C.S. § 3124.1.

[5] 18 Pa.C.S. § 3126(a)(7).

[6] 18 Pa.C.S. §3127(a).

victim)), and involuntary deviate sexual intercourse,[7] indecent assault,[8] indecent exposure[9] and sexual assault[10] in CP-45-JV-0000172-2015 ("Case 172" (male victim)). The charges stemmed from sexual acts N.B. allegedly perpetrated upon his half-siblings, N.M. and N.M., aged 4½ and 6½ at the time of the incidents. After careful review, we affirm.

N.B. is the half-brother of the victims in this case, N.M. (female) and N.M. (male) (collectively "the victims"). N.B. and the victims have the same biological mother, E.M. (Mother). The victims' father is C.M. (Stepfather). N.B.'s biological father is J.B (Father). At the time of the incidents, the victims, N.B. and three other brothers and sisters lived in Mother's residence. N.B. lived primarily with Mother, but on certain weekends he would reside with Father. By all accounts, Mother and Father had been involved in a contentious custody battle over N.B. for ten years. However, there was a significant lull in the custody proceedings at the time the victims made their allegations against N.B. The evidence of the sexual assaults in both cases was purely circumstantial; there was no forensic or physical evidence of abuse to either victim.

_____

[7] 18 Pa.C.S. § 3123(b).

[8] 18 Pa.C.S. §3126(a)(7).

[9] 18 Pa.C.S. § 3127(a).

[10] 18 Pa.C.S. § 3124.1.

On August 17, 2015, N.B. filed a pretrial omnibus motion seeking, among other things, taint and competency hearings regarding both victims. In the motion, N.B. specifically requested that the court "convene a taint hearing regarding the video testimony of [the victims] . . . [because] . . . there was taint in the reporting process and investigation of this case as well as the child advocacy interviews conducted regarding the alleged child victims." Defendant's Omnibus Pretrial Motion, 8/17/15, at ¶¶ 34, 37.

On January 22, 2016, and March 29, 2016, the trial court held "taint" hearings to address whether the case involved "false memories or distortion of memories by [forensic] interview techniques [of the child victims] that [were] unduly suggestive and coercive." Trial Court Opinion, 10/14/16, at 1-2. At the hearings, Dr. Frank M. Datillio, a licensed clinical and forensic psychologist, was certified as an expert in forensic psychology and interviewing. N.T. Taint Hearing, 1/22/16, at 63; N.T. Taint Hearing, 3/29/16, at 7, 25. Doctor Datillio stated that "there [was] the potential for [taint]" in N.M.'s [male] testimony from the [Child Advocacy Center (CAC)] interview as "a result of the interview process[,]" *id.* at 95, and, that to a degree of forensic psychological certainty, he believed that the CAC video was tainted as a result of "too many leading questions, [that the interview was conducted] in too quick a time[,]" and that "there was [not] enough operationally defined aspects with regard to touch and body part." *Id.* at 97.

CAC child forensic interviewer, Kristen Fetcho, also testified at the taint hearing; she was admitted as an expert in forensic interviewing and child development. Fetcho, who had been employed as a forensic interviewer for more than twenty years, had conducted almost 8,500 interviews. Fetcho conducted the interview of N.M. (male) in the instant case. She testified that the CAC uses the National Children's Alliance Children's Advocacy Center method of interviewing children, which is a combination of the Rapport, Anatomy, Touch, Abuse and Closure ("RATAC") Method and other approaches. N.T. Taint Hearing, 3/29/16, at 46. The CAC method includes an "intro, . . . rules, . . . rapport, . . . narrative building, . . . narrative practice[,] . . . family composition and . . . transition." *Id.* After reviewing her videotaped interview of N.M (male) and the interview of N.M. (female), Fetcho concluded that, based on her experience, neither of the children behaved in a way that concerned her, and opined, to a reasonable degree of professional certainty, that there was no taint with regard to either child victim. *Id.* at 52.

Following the taint hearings, the court concluded that, based upon a totality of the circumstances, the testimony was not compelling to show clear and convincing evidence of taint. While the court acknowledged that there were "admittedly signs of possible taint, . . . [it also recognized that] every child acts and reacts differently to events, stress, and interviewing and that . . . in light of the entire testimony of the child in the interview, the child's demeanor and body language during the interview, and the mostly

consistent testimony during the interview, such was not convincing evidence of taint." Trial Court Opinion, 10/14/16, at 4. On May 6, 2016, the court issued an order denying N.B.'s motion requesting dismissal of the charges due to taint.

On July 19, 2016, an *in camera* Tender Years Hearsay Exception[11] proceeding was held with N.B. (female) and N.B. (male), during which the attorneys in the case and, to a limited extent, the judge asked the children questions regarding their ability to distinguish the truth from a lie and how they would feel about testifying in front of N.B. The trial judge ultimately concluded that both child victims were competent to testify in the case and that their non-testimonial statements were admissible under section 5985.1. *Id.* at 45. The trial judge also concluded that the statements the children made during their CAC interviews had "enough sufficient indicia of reliability" and that because he believed the children would suffer serious emotional distress, which could impair their ability to reasonably communicate if they

---

[11] *See* 42 Pa.C.S. § 5985.1(a) (Tender Years Hearsay Exception permits out-of-court statement made by a child victim or witness 12 years of age or younger describing, in part, sexual offenses admissible in evidence in criminal or civil proceeding if: "(1) the court finds, in an *in camera* hearing, that the evidence is relevant and that the time, content and circumstances of the statement provide sufficient indicia of reliability; and (2) the child either: (i) testifies at the proceeding; or (ii) is unavailable as a witness.").

.

were required to testify in front of N.B., they could testify using a "contemporaneous alternative method" such as video. *Id.* at 46-47.

Following a detention hearing, the court found that the Commonwealth provided prima facie evidence of IDSI, indecent assault, indecent exposure, and sexual assault. After a hearing, the court adjudicated N.B. delinquent; N.B. was placed under the temporary legal custody of Monroe County Children and Youth for placement at a sex offender treatment program at La-Sa-Quik, a community-based home located near Williamsport, Pennsylvania. On August 29, 2016, N.B. filed a post-dispositional motion to vacate or modify the adjudicatory order of delinquency in both cases. *See* Pa.R.J.P. 620. The motion raised the issue of sufficiency and/or inconsistent victim testimony in the cases.[12] The court denied the motion on September 1, 2016. N.B. filed a timely notice of appeal and court-ordered Pa.R.A.P. 1925(b) concise statement of matters complained of on appeal. He raises the following issues for our consideration:

> (1) Whether the trial court erred when it denied the juvenile's motion to dismiss for taint the charges of [r]ape of a child, [i]nvoluntary [d]eviate [s]exual [i]intercourse (IDSI), [a]ggravated indecent assault, [s]exual [a]ssault, [i]ndecent [a]ssault, and [i]ndecent [e]xposure as to the victim N.M. [female] . . . due to the tainted influence of the juvenile's biological mother and step-father regarding the testimony of the child witness; AND

---

[12] *See* Pa.R.J.P. 629(A)(2) ("Issues raised before or during the adjudicatory hearing shall be deemed preserved for appeal whether or not the party elects to file a post-dispositional motion on those issues.").

(2) Whether the trial court erred when it denied the juvenile's motion to dismiss for taint the charges of [IDSI,] 18 Pa.C.S. § 3123(b); [i]ndecent [a]ssault[,] 18 Pa.C.S. [§§]3126 [] (a)(7) [&] 18 Pa.C.S. § 3127(a)[;] and [s]exual [a]ssault[,] 18 Pa.C.S. §3124.1 as to the victim N.M. [male] due to the tainted inference of the juvenile's biological mother and step-father regarding the testimony of the child witness.

Appellant's Brief, at 5.[13]

Our Supreme Court's decisions in **Commonwealth v. Delbridge**, 855 A.2d 27 (Pa. 2003) ("**Delbridge I**") and **Commonwealth v. Delbridge**, 859 A.2d 1254, 1256 (Pa. 2004) ("**Delbridge II**"), are the seminal cases addressing the issue of taint in cases involving the alleged sexual abuse of children. In **Delbridge II**, the Supreme Court noted:

The core belief underlying the theory of taint is that a child's memory is peculiarly susceptible to suggestibility so that when called to testify a child may have difficulty distinguishing fact from fantasy. **See** Josephine A. Bulkley, The Impact of New Child Witness Research on Sexual Abuse Prosecutions, in Perspectives on Children's Testimony, 208, 213 (Stephen J. Ceci et al. eds, 1989). **Taint is the implantation of false memories or the distortion of real memories caused by interview techniques of law enforcement, social service personnel, and other interested adults, that are so unduly suggestive and coercive as to infect the memory of the child, rendering that child incompetent to testify.** **See**, Julie Jablonski, Assessing the Future of Taint Hearings, 33 Suff. J. Trial & App. Adv., 49, 50 (1998).

_____

[13] N.B. notes in his brief that while he raised the issues of weight and sufficiency of the evidence in his Rule 1925(b) concise statement of matters complained of on appeal, he has abandoned those claims on appeal. Thus, we will confine our review to the taint issue.

*Id.*, citing *Delbridge I*, 855 A.2d at 34-35 (emphasis in original).    An allegation of taint in a case involving alleged sexual abuse of a child raises a question of witness competency.  *See Delbridge I*, 855 A.2d at 34-35.  In order to determine whether a child witness is considered competent to testify, a court must examine whether the child has:

> (1) such capacity to communicate, including as it does both an ability to understand questions and to frame and express intelligent answers; **(2) [the] mental capacity to observe the occurrence itself and the capacity to remember *what it is* that [he or] she is called to testify about**, and (3) a consciousness of the duty to speak the truth.

*Id.* at 39 (emphasis added); *see generally* Pa.R.E. 601(b) (Competency). It is the second prong of the competency test that speaks directly to the issue of taint.

In *Delbridge I*, *supra*, our Supreme Court explained the pre-trial procedure to determine whether interviewer bias influenced a child witness to a degree that the proffered testimony may have been irreparably compromised:

> A determination of a child witness's competency involving allegations of taint necessitates review of the manner in which a child's allegations of sexual abuse surfaced and were investigated.  In some cases it is conceivable that resolution of this issue could be had through an examination of the factual context of the interview process.  It is also conceivable that with certain children, given differences in age, experience, mental acuity and familial circumstances, and considering specifics of the allegations of abuse, and the circumstances surrounding the investigation itself, that expert testimony may be necessary. Further, it is possible that the phenomenon of taint may undergo revision or reconsideration in the relevant scientific, psychological or law enforcement communities that should be

brought to the attention of the trial court. In Pennsylvania, expert testimony is admissible when a matter in issue is beyond the common knowledge of the factfinder: If scientific, technical or other specialized knowledge beyond that possessed by a layperson will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise.

*Id.* at 43. Additionally, since competency is the presumption, in Pennsylvania the moving party must carry the burden of overcoming that presumption. *Id.* at 40-41. As with all questions of competency, the resolution of a taint challenge to the competency of a child witness is a matter addressed to the discretion of the trial court. *Id.* Finally, our standard of review of a trial court ruling on competency is for an abuse of discretion. *Rosche v. McCoy*, 156 A.2d 307 (Pa. 1959).[14]

Instantly, N.B. alleges that Mother fabricated the allegations against him after he expressed an interest to live with Father and after she read N.B.'s private journal entries detailing N.B.'s accounts of Mother and Stepfather's verbal and physical abuse inflicted upon him. Moreover, N.B. claims that the CAC employs interview techniques, which include leading questions and "'precogitated' findings, that lead to the elicitation of inadmissible, incompetent testimony." Appellant's Brief, at 6.

_____

[14] When reviewing a trial court's determination that a child-witness is competent, "[i]t is appropriate for an appellate court to look not only to the trial court's questioning of the child [at the competency hearing] prior to the child testifying, but also to the child's actual testimony." *Commonwealth v. Trimble*, 615 A.2d 48, 51 (Pa. Super. 1992).

Taint implicates the ability of a child to distinguish real memories of an event from falsely implanted suggestions that could infect the mental capacity of the child witness to independently recall the event and truthfully testify. ***Delbridge II***, 859 A.2d at 1255. In order to determine whether taint exits in a given case, at a competency hearing the central focus is "the minimal capacity of the witness to communicate, to observe an event and accurately recall that observation, and to understand the necessity to speak the truth." ***Delbridge I***, 855 A.2d at 40.

We concur with the trial court that N.B. did not provide clear and convincing evidence of taint to overcome the presumption of competency with regard to the child victims. First, N.B.'s allegations that Mother fabricated the abuse claims is not borne out in the record. While N.B. contends that Mother inflicted abuse upon him, when pressed to detail the events leading to that conclusion, N.B. testified that Mother made him do extensive chores around the house and watch his younger siblings. Moreover, to the extent that N.B. contends Mother would have conjured up the sexual abuse allegations against him because she was jealous that N.B. wanted to live with Father, we note that when the allegations surfaced, Mother indicated that she wanted N.B. to move out of her house immediately and live with Father. There is simply nothing clear and convincing to prove that Mother fabricated the abuse allegations. ***See Commonwealth v. Pukowsky***, 147 A.3d 1229, 1234 (Pa. Super. 2016) (where defendant asserted that child victim's testimony was tainted because

"incidents occurred during a period of marital stress between himself and [the child's mother]," court concluded that fact that parents were in divorce litigation in no way caused mother to implant false memories or distortions onto victim regarding alleged sexual abuse by defendant that would make child incompetent to testify).

With regard to the interview procedures employed by the staff at the Scranton CAC, we likewise find that N.B. failed to prove that the victims' memories were compromised by tainted interview techniques.

N.M. (male) was interviewed on June 29, 2015, by Scranton CAC worker, Kristin Fetcho.[15]  During his CAC interview, N.M. consistently and repeatedly stated that he did not remember what happened with regard to any alleged incidents with N.B.  However, as a result of her persistence and direct[16] questioning, N.M. eventually told Fetcho that N.M. touched his private parts, took him into their bedroom closet, told her that one of them was wearing clothes and the other pajamas, and said that he remembered

_____

[15] Mother testified that N.M. was identified at an early age with both communication and speech issues; he had an Individualized Education Program (IEP) in place for his speech and verbal issues at the time of his CAC interview.  Mother testified that she told Fetcho about these issues before she conducted the CAC interview.  However, Mother also testified that N.M. does not have any cognitive or learning disabilities that would impair his ability to understand communication.  N.T. Proceeding, 4/15/16, at 11-12.

[16] Fetcho defined direct questioning during a forensic child interview as one where the interviewer asks the "who's, what's and where's" to obtain details on something the child already stated.  N.T. Taint, 3/29/16, at 51.

seeing N.B.'s private parts. When asked what it felt like when N.M. touched him, he replied that "it tickled." While N.M. did not always answer Fetcho's questions in an intelligible, articulate manner as a result of N.M.'s diagnosed speech impediments, his competency as a witness was not impaired as a result of them. *Rosche*, 156 A.2d at 310-12. N.M.'s answers are consistent with the reality that every child reacts differently to life experiences, his language was appropriate based on his speech and communication issues, and his unaffected recounting of the events was not unusual given the variance in each individual child's temperament.

Although Dr. Datillio "concluded to a reasonable forensic psychological certainty [that] there was taint in [Case 172] in the CAC interview, on cross-examination Dr. Datillio recognized that there are other interview techniques then the one that he employs; leading questions are oftentimes necessary early in an interview; CAC interviewer Fetcho stopped for a break only four minutes later than when he would have; and N.M.'s behavior during the interview could be attributed to his feeling uncomfortable with the details he was recounting. N.T. Taint Hearing, 3/29/16, 23-35.

We are mindful that "[t]he clear and convincing burden accepts that some suggestibility may occur in the gathering of evidence, while recognizing that when considering the totality of the circumstances, any possible taint is sufficiently attenuated to permit a finding of competency." *Delbridge I*, 855 A.2d at 41. Here, while admittedly there was some suggestive questioning during N.M.'s (male) interview, we agree with the

trial court that it did not render N.M. (male) incompetent to testify. The evidence reveals that while N.M. had some speech impediments and was not immediately forthcoming with information, he did have the mental capacity to observe the occurrence itself and the capacity to remember what it is that he was called to testify about. *Id.*

Instantly, Bridget Conway from the Scranton CAC interviewed N.M. (female) on June 29, 2015. While Conway may not have employed optimal interviewing techniques, after viewing the entire video tape of the interview, we concur with the trial court that the techniques were not so suggestive or leading as to compel a conclusion that the victim's testimony was tainted or that she was incompetent to testify at trial. *See Pukowsky*, *supra* (trial court did not abuse its discretion in determining child victim was competent to testify where psychotherapist's questioning was "gentle, open-ended and appropriate," any taint was "mild" and was not enough to render child incompetent to testify, and that while interviewer may not have been most proficient in techniques, questions were not leading, suggestive or coercive). Moreover, any discrepancies in N.M.'s (female) statements and testimony were so minor and reconcilable that they do not raise doubt about her competency. *See Commonwealth v. Fox*, 282 A.2d 341 (Pa. 1971) (inconsistencies in recollection of events go to witness's credibility, not competency).

Order affirmed.

- 13 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/12/2017