J-S46015-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JAVON A. GARRETT | : | |
| | : | |
| Appellant | : | No. 1341 EDA 2017 |

Appeal from the Judgment of Sentence March 16, 2017
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0005053-2014

BEFORE: BOWES, J., SHOGAN, J., and KUNSELMAN, J.

MEMORANDUM BY BOWES, J.:                    **FILED NOVEMBER 30, 2018**

Javon A. Garrett appeals from the aggregate judgment of sentence of six to twelve years incarceration, followed by thirty years probation, after a jury convicted him of three counts of involuntary deviate sexual intercourse ("IDSI") involving victim Z.M. We affirm.

Appellant's mother and Z.M.'s mother were close friends going back to the 1980s such that Z.M.'s mother thought of Appellant as a brother, and Z.M. knew him as "Uncle Javon." N.T. Trial, 8/3/16, at 62-63. Z.M. and his brother were around Appellant and his family nearly every day, often went to Appellant's home, and were left in Appellant's care. *Id*. at 47, 68. One day several years later, Z.M. went to his brother, told him that Appellant had "made me suck his thing," and burst into tears. *Id*. at 43-44. The brother took Z.M. to his mother, and he repeated the story to her. *Id*. at 62, 64. The following day, she took Z.M. to the police station. *Id*. at 67.

Appellant was arrested and charged with, *inter alia*, three counts of IDSI, and ultimately proceeded to a jury trial. The trial court summarized the evidence offered against Appellant at trial as follows.

> The facts at trial established that [Appellant] sexually assaulted [Z.M.] who at the times in question was between the ages of three and five. Said assaults took place over a one-and-[one]-half to two year period beginning in 2006. The victim testified that during this time period [Appellant] forced him to perform oral sex on [Appellant] between ten and twenty times. This occurred at three different locations: [Appellant's] bedroom, [Appellant's] basement, and in the victim's home. The victim first told his brother and then his mother about these incidents. The day after his disclosure, the victim's mother took the victim to the Chester police station where the victim explained to the police what had happened.
>
> According to the victim, the first time [Appellant] forced him to perform oral sex occurred in [Appellant's] bedroom. The victim testified that [Appellant] closed the door, moved his dresser in front of the door, and told the victim to "touch" and "lick" his penis. The victim also testified that, on a separate occasion, [Appellant] made the victim perform oral sex in the basement bathroom. Finally, the victim testified that [Appellant] also made him perform oral sex at the victim's house, while the victim's mother went to the market.
>
> On March 16, 2017[, the trial] court sentenced [Appellant] to 24 to 48 months on each of the three counts of involuntary deviate sexual intercourse, which were ordered to run consecutively to each other. [Appellant] was also sentenced to 30 years of consecutive probation. [Appellant] was given credit for time served of 240 days. On March 20, 2017[, Appellant] filed a motion for reconsideration of sentence, which was denied . . . on March 30, 2017.

Trial Court Opinion, 10/30/17, at 1-2 (citations omitted).

Appellant filed a timely notice of appeal, and both Appellant and the trial court complied with Pa.R.A.P. 1925. Appellant presents only one claim of error for this Court's review:

> The trial court abused its discretion in concluding that the victim, [Z.M.], was competent to testify at trial. No testimony was offered to demonstrate [Z.M.] had any recollection of the time period of the allegations against Appellant. To the contrary, [Z.M.] demonstrated a poor memory or no memory at all of both recent events and the time period of the allegations.

Appellant's brief at 6.

We begin with the applicable law. "It is well-settled that the determination of whether a child is competent to testify is within the sound discretion of the trial court, and an appellate court should not interfere with the lower court's ruling absent a manifest abuse of discretion." *Commonwealth v. Hunzer*, 868 A.2d 498, 507 (Pa.Super. 2005). A mere error in judgment does not constitute an abuse of discretion; "rather, an abuse of discretion will be found when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record." *Commonwealth v. Pukowsky*, 147 A.3d 1229, 1233 (Pa.Super. 2016) (citation and internal quotation marks omitted).

Under Pa.R.E. 601, "the testimony of any person, regardless of [his or her] mental condition, is competent evidence, unless it contributes nothing at all because the victim is wholly untrustworthy." *Commonwealth v. Boich*,

982 A.2d 102, 109 (Pa.Super. 2009). "The presumption of competency also applies to child witnesses." *Id*. at 110 n.6.

The witness at issue in the instant case, Z.M., was one month away from turning thirteen years old. N.T., 8/2/16, at 4. Therefore, the following informed the trial court's duty.

> When the witness is under fourteen years of age, there must be a searching judicial inquiry as to mental capacity, but discretion nonetheless resides in the trial judge to make the ultimate decision as to competency. In making its determination, the court must inquire whether the child possesses: (1) such capacity to communicate, including as it does both an ability to understand questions and to frame and express intelligent answers, (2) mental capacity to observe the occurrence itself and the capacity of remembering what it is that she is called to testify about and (3) a consciousness of the duty to speak the truth.

*Hunzer*, *supra* at 507 (quoting *Commonwealth v. D.J.A.*, 800 A.2d 965, 969 (Pa.Super. 2002)). Both the child's ability to remember at the time of the testimony, as well as his ability to have perceived the events about which he is testifying when they happened, are relevant to the trial court's determination. *D.J.A.*, *supra* at 970-71.

On appeal, Appellant does not contest that Z.M. "had a consciousness of the duty to tell the truth, as well as the ability to communicate and express answers to questions posed[.]" Appellant's brief at 11. However, Appellant argues that there was no evidence presented to demonstrate that Z.M. "had the mental capacity to observe the occurrence itself and the capacity to remember[.]" *Id*. It is Appellant's position that, "[t]o the contrary, the limited questions asked of record [show that] he had no memory of the time period

- 4 -

of the allegations." ***Id***. Accordingly, Appellant maintains that the trial court abused its discretion in permitting Z.M. to testify without having a proper basis to conclude that Z.M. was competent to do so. ***Id***.

By the time of the competency hearing, the trial court was familiar with Z.M.'s recitation of his recollections of the events in question, which were alleged to have been committed by Appellant when Z.M. was between three and five years old. Z.M.'s testimony from Appellant's preliminary hearing was before the trial court in relation to Appellant's motion for a writ of *habeas corpus*. ***See*** Omnibus Pretrial Motion, 4/27/15, at ¶¶ 13-16; ***see also*** Trial Court Opinion, 10/30/17, at 4 n.2.

Specifically, at the preliminary hearing, Z.M. testified that Appellant made Z.M. suck Appellant's "man's private part" on more than ten occasions. N.T. Preliminary Hearing, 8/12/14, at 13-14. Appellant's mother would usually pick Z.M., his mother, and his siblings up and drive them to Appellant's home. ***Id***. at 19. Appellant would tell Z.M. to come upstairs, or that he had something to show Z.M. ***Id***. at 25-26. The incidents happened in Appellant's room, which Z.M. recalled had white walls, a bed, and a dresser across from the bed with a television on it. ***Id***. at 15, 20. Appellant, sitting on his bed, "just pulled down his pants and said you know what to do." ***Id***. at 15, 24-25.

At the competency hearing itself, questioning relevant to Z.M.'s memory included the following.

> Q. Now, [Z.M.], I want to ask you a couple of questions about memory. Do you know what memory is?

- 5 -

A.    Yes.

Q.    Can you tell me before this year, before this year in school in 8th grade, who's your favorite teacher then?

A.    I don't have a favorite teacher.

Q.    Do you remember any of the names of your teachers in 6th grade?

A.    Yes.

Q.    What were their names?

A.    Mr. T.  I don't - - it's hard to pronounce his full name.

Q.    So you guys called him Mr. T?

A.    Yeah.

Q.    What did he teach?

A.    Every subject.

Q.    Okay.  So in 6th grade you pretty much just get one teacher?

A.    Yes.

Q.    Is that the same way in 8th grade?

A.    No.

Q.    you have different teachers in 8th grade?

A.    Yes.

Q.    When did that start?  When did you start having different teachers?

A.    In 7th grade.

Q.    Where do you go to school in 8th grade?

A.  In 8th grade?

Q.  Um-hum.

A.  Toby Farms.

Q.  Where did you go to school in 5th grade?

A.  Toby Farms - -  oh, I'm sorry.  CCCS.

Q.  So when did you go to Toby Farms?

A.  Seventh grade.

Q.  Starting in 7th grade?

A.  Yes.

     . . . .

Q.  [Z.M.], I want to take you back a bit more in time.  do you remember the first house that you lived in?

A.  No.

Q.  How old were you when you moved to the first house that you remember?

A.  Four - - four or three.

Q.  Where did you live?

A.  People Street.

Q.  Can you just briefly for the judge describe the house?  Was it a townhouse, a stand[-]alone house?

A.  What do you mean by stand[-]alone, like space in between?

Q.  Right.

A.  Yes.

Q.     Okay.  So there was spaces in between.  How many floors
       did it have?

A.     One - - well, two.

Q.     Like a basement and a first floor?

A.     No, like living room and then - -

Q.     And then an upstairs.  Okay.  Do you remember anything
       about your room?

A.     Yes.

Q.     Tell us about your room.

A.     It had one window like opening the door, then the window
       in front of you, and I had a closet next to the door, and then
       a TV on this wall and I have a bunkbed.

N.T., 8/2/16, at 6-10.

After Appellant cross-examined Z.M., highlighting his lack of memory of

his current teachers or the house in which he lived before he was four or five

years old, **see id**. at 11-14, the trial court declared Z.M. competent to testify

and offered the following explanation.

I'm satisfied that he knows the differen[ce] between a truth and
a lie and knows his obligation to tell the truth.  . . .  His ability to
communicate was very good on the stand.  . . .  I believe he has
the capacity to observe an event.  He spoke about his favorite
coloring.  He spoke about a number of things that would require
him to describe.  He described his - - he remembered Mr. T., his
teacher, and he remembered that in 6th grade he has one teacher
and in 7th and 8th he had multiple ones.  The [c]ourt is a little
concerned [that] he did not remember the names of his teachers
from his current year, but the [c]ourt is also aware that he was
- - there was several things that happened during the current year
that took him out of school for two and a half months, and
although that's - - although the [c]ourt . . . feels that he should
be able to remember despite sporadic attendance, and the [c]ourt

- 8 -

did not ask whether the times he was not away for two and a half months how his attendance was. We don't even know that. But the point of the matter is, I'm a little concerned about that but he - - the more - - I don't want to use the word "more." Perhaps important was that he could not remember the details of his bedroom prior, you know, at age - - if I remember the testimony, he moved to a house that he could remember at age four or five. The events were alleged to have taken place when he was three or four[.]

. . . .

And he could not remember the details of his bedroom. However, the [c]ourt was troubled a bit because the [c]ourt thought that the alleged events took place in his bedroom. They did not. They took place - - allegedly took place at a different location. The [c]ourt is understandable too that for a three- or four-year-old to remember the details of a home at that time, the details of what his bedroom would like, I mean, I'm trying to compare it to the detail he gave when he was able to remember. He remembered where the door was in his bedroom at age five, where the television was, so he's pretty good, but he couldn't remember anything like that. He had no memory. But at the same time, I think that the memory of a traumatic event as opposed to the details of a residence that you resided in at age three or four, the ability is not the same in this [c]ourt's humble opinion. This [c]ourt would feel that there's more reason to remember a traumatic event, which are alleged to have taken place in this case[;] you would be more likely to remember that than you would [remember] where you lived, [or] the details of one's bedroom at age three or four. So with all things considered, I'm finding that [Z.M.] is competent to testify.

*Id*. at 21-23.

We discern no abuse of discretion in the trial court's ruling. At the time of the hearing, the trial court had sufficient information to conclude that, at the relevant time periods, Z.M. had the ability to perceive accurately what happened to him. *See Hunzer*, *supra* at 507 (affirming finding of competency of child who was three years old at the time she was assaulted,

where the child had been able to recall the abuse in detail and "answered questions relating to her age, birthday, current and former addresses, her best friend, with whom she resided, her pet's name, what school she attended, and in which grade she was").

Although Z.M. was very young at the time of the abuse, and his memory of other events since that time was not solid, we find that the trial court reasonably determined that the discrepancy could be explained by the likelihood that Z.M. retained memories of traumatic events while forgetting mundane details that would not have made an impression on a young child. *See*, *e.g.*, *D.J.A.*, *supra* at 971-72 (reversing trial court's conclusion that victim was not competent to testify where earlier recording of her describing her father's sexual abuse perpetrated when she was five years old demonstrated her ability to perceive and remember, although she did not grasp at the time the nature of the acts, and often strayed off topic, giving responses that "lay somewhere between the whimsical and the nonsensical").

In sum, the record does not demonstrate that the trial court's ruling on Z.M.'s competency was the result of a misapplication of the law or an exercise of judgment that was manifestly unreasonable or the result of partiality, prejudice, bias, or ill-will. *Pukowsky*, *supra* at 1233. As such, no relief is due.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/30/18