J-S22009-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| LOGAN JEFFREY HALE | : | |
| | : | |
| Appellant | : | No. 1142 MDA 2018 |

Appeal from the Judgment of Sentence Entered February 26, 2018
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0002839-2017


BEFORE:   SHOGAN, J., DUBOW, J., and PELLEGRINI*, J.

MEMORANDUM BY SHOGAN, J.:                   **FILED AUGUST 14, 2019**

Appellant, Logan Jeffrey Hale, appeals from the judgment of sentence

entered on February 26, 2018, in the Court of Common Pleas of York County.

We affirm.

The trial court summarized the factual history of this case as follows:

> It is undisputed that on the night of January 19, 2017,
> Jonathan Kirsch and [Appellant] went to Granfalloons in York,
> Pennsylvania.   There the two men met, and ultimately left
> Granfalloons with Kenneth Ray [("Ray")].

> Ray's testimony confirmed that he was at Granfalloons on
> the night of January 19, 2017.  While he went to Granfalloons with
> other friends he did interact with [Appellant], a former co-worker,
> and Jonathan Kirsch.  Ray had approximately four or five beers
> and was buzzed by the time he left.  Ray left Granfalloons with
> [Appellant] and Kirsch in order to get a ride to the West side of
> York.  Ray testified that he did not know that they were going to
> [Appellant's] house when he left with them. Upon arriving at
> [Appellant's] house he invited Ray inside.  Ray's next memory is
> of being held up against the garage next to where they parked
> and a knife being brandished in his face and being pointed towards

_____
*   Retired Senior Judge assigned to the Superior Court.

his abdomen and chest. [Appellant] and Kirsch said things like "where's it at?" This questioning confused Ray as he did not have a substantial amount of money on him and had forgotten his cellphone at Granfalloons.

Despite Ray defending himself, someone held his arm and [Appellant] stabbed him in the abdomen. As Ray tried to run away and [sic] [Appellant] and Kirsch pursued him. During his attempt to flee his attackers, Ray fell down and one of the two men stabbed him in the back. Ray, no longer pursued, stumbled to one of the nearby houses whose porch light was on. This person called 911, police and paramedics were dispatched and Ray was transported to York Hospital.

While at the hospital, Ray had four surgeries, spent almost a month in the Intensive Care Unit, and was intubated. It was determined that Ray was not stabbed just one time, but was stabbed seven times. As a result of the stabbing, Ray has significant scarring, suffers from shortness of breath and frequently finds blood when he uses the bathroom.

The most significant differences between [Appellant's] and Ray's accounts are that Ray testified that he never entered [Appellant's] residence and the entire altercation took place in the alleyway behind [Appellant's] residence. [Appellant's] account is that Ray did enter his house and that he stabbed Ray because he was defending himself and others present in the home. However, there was not a single drop of blood found in the home with [Ray's] DNA to corroborate [Appellant's] version of the story.

Officer Bridgett Wilson also testified about what happened that night. Officer Wilson was dispatched to the area of 1527 West King Street for a stabbing. She testified that when she initially saw Ray he was holding his lower abdominal area and his pants were saturated with blood; he attempted to stand up and his intestines started to fall out of his abdomen.

Detective Michael Melendez, who responded to the dispatch with Officer Wilson, also testified. His testimony of Ray's wounds was striking. He likened Ray to a gutted deer, with his intestines spilling out of the knife wound in his abdomen. He also testified that the night of the attack police knocked on doors asking anybody if they had heard or saw anything. Although police knocked on the door of [Appellant's] residence, and the occupants

heard the knocking, nobody answered. In fact, [Appellant] did not notify the police of his involvement in the attack until several days later when the police returned to his residence with a search warrant. At that point [Appellant] was cooperative and directed the police to the knife that was used in the attack that he had discarded by throwing upon [sic] the roof of his house and cleaned of Ray's blood.

[Appellant] was arrested on January 22, 2017, two days after [Ray] was stabbed in the alleyway behind [Appellant's] house.

Trial Court Opinion, 11/7/18, at 3-6 (footnotes omitted).

As a result of this incident, Appellant was charged with attempted homicide and related offenses. A jury trial was held on January 16, 17, and 18, 2018. At the conclusion of the trial, Appellant was found guilty of one count of criminal attempt–murder of the first degree.[1] On February 26, 2018, Appellant was sentenced to eight to sixteen years of imprisonment and ordered to pay restitution.

On March 6, 2018, Appellant filed a post-sentence motion. Appellant filed an application to proceed *in forma pauperis* and a notice of appeal on July 6, 2018. On July 10, 2018, the trial court granted Appellant's motion to proceed *in forma pauperis*. On July 11, 2018, the trial court entered an order

_____

[1] 18 Pa.C.S. § 901(a); 18 Pa.C.S. § 2502(a).

denying Appellant's post-sentence motion by operation of law.[2] Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant presents the following issue for our review: "The trial court erred in precluding Appellant's state of mind testimony when such testimony was not speculative, and was proper testimony in order to establish whether Appellant's belief that he was in imminent fear of serious bodily injury or death was reasonable under the circumstances." Appellant's Brief at 4. Appellant argues that this testimony was relevant to demonstrating that he was justified in defending himself. *Id.* at 14. Appellant asserts that while the trial court based its decision on the fact that Appellant's statements were speculative and outside of his personal knowledge, "[t]here is nothing speculative about

---

[2] If a defendant files a timely post-sentence motion, the notice of appeal shall be filed within thirty days of the entry of the order denying the motion by operation of law in cases in which the judge fails to decide the motion. Pa.R.Crim.P. 720(A)(2)(b). "No direct appeal may be taken by a defendant while his or her post-sentence motion is pending." Pa.R.Crim.P. 720, Cmt. Nevertheless, if the court subsequently denies the post-sentence motion, "[this Court] will treat [an] appellant's premature notice of appeal as having been filed after entry of [an] order denying post-sentence motions." *Commonwealth v. Ratushny*, 17 A.3d 1269, 1271 n.4 (Pa. Super. 2011).

Herein, Appellant filed his notice of appeal on July 6, 2018, and the order denying the motion by operation of law was not entered until July 11, 2018. However, 120 days expired on Wednesday, July 4, 2018. Thus, Appellant's notice of appeal was filed after the 120-day period during which the trial court could have ruled on it. Moreover, the trial court entered its order denying the post-sentence motion by operation of law on July 11, 2018. Thus, we shall treat Appellant's premature notice of appeal as having been filed after entry of the order denying the post sentence motion. *Ratushny*, 17 A.3d at 1271 n.4.

- 4 -

a person's belief that he was going to die unless he employed deadly force in order to protect himself." ***Id.***

> Appellant identifies the following as the testimony at issue:
>
> [TRIAL COUNSEL]: Okay. Do you think that if you had not acted the way you did that you may be dead today?
>
> [APPELLANT]: Yes.
>
> [PROSECUTOR]: Your Honor, I'm going to object.
>
> THE COURT: Other than it is leading or what? What's the foundation for the objection?
>
> [PROSECUTOR]: Well, it is leading.
>
> THE COURT: I will sustain it.
>
> [PROSECUTOR]: And speculative.
>
> [TRIAL COUNSEL]: All right.

Appellant's Brief at 15 (quoting N.T., 1/18/18, at 457). Appellant further asserts that after the first objection was sustained, Appellant's counsel re-approached the question as follows:

> [TRIAL COUNSEL]: If you didn't act the way you did, what do you think would happen to you?
>
> [PROSECUTOR]: Objection. Again, speculation.
>
> THE COURT: I will sustain it.
>
> [TRIAL COUNSEL]: Your Honor, it goes to state of mind. It is paramount to this case.
>
> THE COURT: State of mind is an exception to hearsay. It is not just whatever I'm thinking I can say.

Appellant's Brief at 15-16 (quoting N.T., 1/18/18/, at 457-458).  Appellant further argues that admission of this state-of-mind evidence is critical to a claim of justification because in such a claim, the defendant must present evidence that he had a *bona fide* belief that he was in fear of serious bodily injury or death when he employed deadly force.  Appellant's Brief at 16-17.

"Questions regarding the admission of evidence are left to the sound discretion of the trial court, and the Superior Court, as an appellate court, will not disturb the trial court's rulings regarding the admissibility of evidence absent an abuse of that discretion."  ***Commonwealth v. Pukowsky***, 147 A.3d 1229, 1233 (Pa. Super. 2016).  Furthermore:

> a claim of self-defense (or justification, to use the term employed in the Crimes Code) requires evidence establishing three elements: "(a) [that the defendant] reasonably believed that he was in imminent danger of death or serious bodily injury and that it was necessary to use deadly force against the victim to prevent such harm; (b) that the defendant was free from fault in provoking the difficulty which culminated in the slaying; and (c) that the [defendant] did not violate any duty to retreat."

***Commonwealth v. Mouzon***, 53 A.3d 738, 740 (Pa. 2012).

We note that defense counsel's first attempt to question Appellant was objected to on two bases:  that it was leading and speculative.  N.T., 1/18/18, at 457.  The objection was sustained on both grounds.  ***Id.***  As such, Appellant's claim that the trial court erred in failing to admit this testimony regarding Appellant's state of mind related to his claim of self defense is misplaced and does not overcome the fact that the objection was sustained on the basis that it was leading.

With regard to the second attempt at questioning, the trial court sustained the objection because it called for speculation. *Id.* at 457-458. Counsel asserted that the questions went to Appellant's "state of mind." *Id.* On appeal, Appellant also argues that this "state of mind" testimony was admissible as it is "within a defendant's personal knowledge and demonstrates one of the two elements a jury . . . must evaluate in a case of self-defense." Appellant's Brief at 14.

As the trial court pointed out, "state of mind" evidence refers to an exception to the hearsay rule.[3] The questions posed to Appellant did not call for hearsay statements, nor did Appellant make any hearsay statements in responding to the questions. Thus, the "state of mind" exception was not relevant to the testimony at issue. *See Commonwealth v. Green*, 76 A.3d 575, 579-583 (Pa. Super. 2013) (explaining the "state of mind" hearsay exception). Accordingly, the trial court did not err in failing to allow this testimony on the basis of the "state of mind" hearsay exception.

Furthermore, even if the trial court had erred in excluding this testimony, such error would be harmless.[4] Appellant testified that he stabbed Ray because he feared for his own life or for his brother's and brother's

---

[3] The Rules of Evidence provide a "state of mind" exception to the hearsay rule. Pa.R.E. 803(3).

[4] Harmless error exists where the error did not prejudice the defendant or the prejudice was *de minimis*. **Commonwealth v. Chmiel**, 889 A.2d 501, 521 (Pa. 2001).

girlfriend's lives. N.T., 1/18/18, at 449, 451, 452. Thus, Appellant indeed testified that he believed he was in imminent danger of death or serious bodily injury during the altercation. **Mouzon**, 53 A.3d at 752. Accordingly, exclusion of the subject testimony identified by Appellant, in which he hoped to once again testify that he feared for his life during the altercation, did not prejudice him because it was repetitive of other testimony. Thus, even if the trial court erred in excluding this testimony, Appellant is entitled to no relief because such alleged error was harmless. "[A]n erroneous ruling by a trial court on an evidentiary issue does not require us to grant relief where the error was harmless." **Chmiel**, 889 A.2d at 521. Appellant's claim fails.

Judgment of sentence affirmed.

Judge Dubow joins this Memorandum.

Judge Pellegrini concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 08/14/2019