J-S37021-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHRISTOPHER MCENEANEY | : | |
| | : | |
| | : | No. 3128 EDA 2018 |

Appeal from the PCRA Order Entered, September 12, 2018,
in the Court of Common Pleas of Delaware County,
Criminal Division at No(s):  CP-23-CR-0001914-2006.

BEFORE:  BOWES, J., KUNSELMAN, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY KUNSELMAN, J.:                **FILED OCTOBER 11, 2019**

Christopher McEneaney appeals from the order denying his first petition for relief filed pursuant to the Post Conviction Relief Act ("PCRA").  42 Pa.C.S.A. §§ 9541-9546.  Although we affirm the denial of post-conviction relief, we remand for resentencing in light of **Miller v. Alabama**, 567 U.S. 460 (2012), and **Montgomery v. Louisiana**, ___ U.S. ___, 136 S.Ct. 718 (2016).

A jury found McEneaney, who was sixteen years old at the time of the crime, guilty of the first-degree murder of a homeless man.  McEneaney's co-defendant, Andre Mark was found guilty of third-degree murder.  In addressing the merit of both defendants' direct appeals, the trial court, the Honorable Patricia H. Jenkins, summarized the pertinent facts as follows:

> At 8:00 p.m. on March 24, 2006, a Friday evening, several
> teenagers observed [the victim], a homeless man, carrying

a shovel through a parking lot in Upper Darby near a Modell's store and St. Eugene's Field. The teenagers then witnesses Mark and McEneaney walking after [the victim] while taunting him and yelling insults and curses. Mark and McEneaney then threw rocks at [the victim] that they procured from a construction site in the parking lot. [The victim] hid behind a nearby dumpster to avoid being hit by the rocks. The teenagers noticed that McEneaney had a shiny object in his hand. The object was a knife.

As the teenage witnesses drove away, the two assailants began running after [the victim]. McEneaney motioned with the knife, taunting [the victim] with it. Mark and McEneaney yelled at [the victim] to put down the shovel and fight.

After driving a few blocks away, the teenagers returned to the Bishop Hill Apartments and saw [the victim] lying on a field. The boys called the police. [The victim] had shovel marks on his face and was bleeding and badly injured. [The victim] died from injuries suffered in the attack. The medical examiner concluded that the manner of death was homicide caused by multiple stab wounds.

On March 26, 2006, Mark admitted to Upper Darby police that he and "another guy" (McEneaney) threatened [the victim] after they saw him "going through" a dumpster. The confrontation began with words and escalated to rock throwing after [the victim] "mooned" Mark and the other person. Mark claimed that [the victim] swung a shovel at him, but that he and the "other person" quickly got the upper hand. Mark admitted punching [the victim] in the jaw, "and we just beat the guy." Mark claimed that McEneaney struck [the victim] with the shovel.

McEneaney also gave a statement to police in which he admitted yelling at [the victim] and throwing rocks at him with Mark. McEneaney claimed that he stabbed [the victim] only after [the victim] hit him with the shovel. McEneaney also admitted hitting [the victim] on the head with a shovel.

Trial Court Opinion, 12/27/07, at 3-4 (citations to record omitted).

Following McEneaney's conviction, Judge Jenkins, on May 7, 2007, sentenced him to a mandatory term of life imprisonment without parole. On

October 6, 2008, we rejected McEneaney's claim that Judge Jenkins erred in failing to decertify his case to juvenile court, and affirmed McEneaney's judgment of sentence. ***Commonwealth v. McEneaney***, 964 A.2d 440 (Pa. Super. 2008) (unpublished memorandum). McEneaney did not seek further review.

On August 3, 2009, McEneaney filed a timely *pro se* PCRA petition, and the PCRA court (Judge Jenkins) appointed counsel. Original PCRA counsel filed an amended petition on McEneaney's behalf, in which he raised several claims of ineffectiveness of trial counsel. In response to the Commonwealth's answer, Judge Jenkins ordered original PCRA counsel to correct certain deficiencies in the petition, and original PCRA counsel filed a second amended petition. On January 4, 2011, Judge Jenkins issued Pa.R.Crim.P. 907 notice of her intention to dismiss McEneaney's PCRA petition without a hearing. In a footnote, Judge Jenkins briefly explained why each claim of trial counsel's ineffectiveness lacked merit. McEneaney did not file a counselled response.[1] By order entered February 10, 2011, Judge Jenkins dismissed McEneaney's PCRA petition. McEneaney's original PCRA counsel did not file an appeal from this determination.

---

[1] In response, McEneaney filed a *pro se* "Motion for Leave to Replace Counsel," in which he asserted that original PCRA counsel abandoned him and sought new counsel to assist him in seeking post-conviction relief. By order entered January 26, 2011, Judge Jenkins denied this petition. McEneaney unsuccessfully appealed this decision to this Court.

On February 16, 2011, newly-retained PCRA counsel filed a "Motion for *NUNC PRO TUNC* Relief" on McEneaney's behalf. In this petition, new PCRA counsel claimed that original PCRA counsel "abandoned [McEneaney] by failing to cure the defective petition. As a direct result of [original PCRA] counsel's abandonment and ineffectiveness, the [PCRA] Court denied the petition and issued the 907 notice of dismissal." Motion, 6/18/12, at 3. In the request for relief, McEneaney's new PCRA counsel asked the PCRA court to "reinstate [McEneaney's] Post Conviction rights and permit him to file an amended petition." *Id.* at 5. Alternatively, counsel requested that the PCRA court "reinstate his appellate rights and permit him to timely appeal the dismissal of the PCRA petition to the Superior Court." *Id.* Thereafter, McEneaney's new counsel supplemented this petition with a claim that **Miller v. Alabama**, 132 S.Ct. 2455 (2012), rendered his petition timely filed, since that decision was filed on June 25, 2012.

Following Rule 907 notice, the PCRA court, by order entered October 16, 2012, dismissed McEneaney's *nunc pro tunc* PCRA petition as untimely filed. Although the PCRA Court acknowledged that a PCRA petitioner could establish the newly discovered time-bar exception by establishing attorney abandonment,[2] the court concluded that McEneaney failed to exercise due diligence, because he did not file his subsequent petition within sixty days of

---

[2]**See** PCRA Court Opinion, 3/20/13, at 7 (citing **Commonwealth v. Bennett**, 930 A.2d 1264 (Pa. 2002)).

the date he discovered that he was abandoned by original PCRA counsel. **See** PCRA Court Opinion, 3/20/13, at 7-8.

McEneaney filed a timely appeal to this Court. On March 7, 2014, a divided panel vacated the PCRA court's order and remanded the case, directing the PCRA court to determine whether original PCRA counsel abandoned McEneaney. **See Commonwealth v. McEneaney**, 100 A.3d 298 (Pa. Super. 2014), unpublished memorandum at 13-14.[3]

Following remand, original PCRA counsel testified at an evidentiary hearing that the PCRA court held on April 18, 2017. According to original PCRA counsel, he did not file an appeal because he never received notice of the court's final order. N.T., 4/18/17, at 40. By order entered September 18, 2018, the PCRA court granted McEneaney *nunc pro tunc* reinstatement of his right to appeal the dismissal of his second amended petition. The court, however, denied McEneaney's request to further amend that petition to include new claims of trial counsel's ineffectiveness. This timely appeal followed. Both McEneaney and the PCRA court have complied with Pa.R.A.P. 1925.

McEneaney now raises the following issues for our review:

> I. Were [McEneaney's] Sixth and Fourteenth Amendment rights violated when his prior [PCRA counsel] filed an inadequate amended PCRA petition which was not supported by either argument or

---

[3] Judge Strassburger dissented, as he agreed with the PCRA court that McEneaney's second PCRA petition was untimely.

evidence and failed to correctly frame, raise and argue meritorious claims that [McEneaney] specifically asked him to raise?; Were [McEneaney's] constitutional rights violated when the PCRA Court refused to permit [McEneaney] with the assistance of current PCRA counsel to amend the inadequate PCRA filed by prior PCRA counsel?

II.    Did the PCRA court violate [McEneaney's] Fourteenth Amendment rights when it held that [McEneaney] was not prejudiced by trial counsel's ineffective failure to file a pretrial Motion to Suppress [McEneaney's] statements to police?

III.   Did the PCRA court violate [McEneaney's] Fourteenth Amendment rights when it held that trial counsel was not ineffective under the Sixth Amendment for failing to call [McEneaney's] expert, Dr. [Richard] Saferstein, on the subject of the victim's violent propensities and the impact of drug and alcohol use on those propensities?

IV.    Was Appellate Counsel ineffective under the Sixth Amendment for failing to appeal the Court's ruling precluding admission of evidence of a PFA related to evidence of the [victim's] gentle nature?

V.     Did the PCRA court violate [McEneaney's] Fourteenth Amendment rights when it held, without benefit of a hearing, that trial counsel was not ineffective for failing to object to the prosecutor's comments during opening argument comparing the defendants to hunters "stalking their prey" and "killing for sport" and then highlighting this in the defense closing?

VI.    Did the PCRA Court violated [McEneaney's] Fifth and Fourteenth Amendment rights when it held, without benefit of a hearing or any evidence that trial counsel was not ineffective under the Sixth Amendment for failing to object, move for a mistrial or otherwise bring to the attention of the court that a juror was sleeping/inattentive?

McEneaney's Brief at 3-4 (roman numerals corrected).[4]

Our scope and standard of review is well settled:

> In PCRA appeals, our scope of review is limited to the findings of the PCRA court and the evidence on the record of the PCRA court's hearing, viewed in the light most favorable to the prevailing party. Because most PCRA appeals involve questions of fact and law, we employ a mixed standard of review. We defer to the PCRA court's factual findings and credibility determinations supported by the record. In contrast, we review the PCRA court's legal conclusions *de novo.*

***Commonwealth v. Reyes-Rodriguez***, 111 A.3d 775, 779 (Pa. Super. 2015)

(citations omitted).

> When the PCRA court has dismissed a petitioner's PCRA petition without an evidentiary hearing, we review the PCRA court's decision for an abuse of discretion. ***Commonwealth v. Roney***, 79 A.2d 595, 604 (Pa. 2013). The PCRA court has discretion to dismiss a petition without a hearing when the court is satisfied that there are no genuine issues concerning any material fact, the defendant is not entitled to post-conviction collateral relief, and no legitimate purpose would be served by further proceedings. ***Id.*** To obtain a reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of material fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing.

***Commonwealth v. Blakeney***, 108 A.3d 739, 750 (Pa. 2014).

---

[4] In its brief, the Commonwealth asks this Court to strike McEneaney's Brief and remand for a new briefing schedule because new PCRA counsel includes issues not raised below and attaches to the brief documents that do not appear in the certified record. ***See*** Commonwealth's Brief at 19-25. Although we decline to do so, we will address only the issues that were preserved below, and only to the extent that documents of record support McEneaney's arguments.

In his first appellate issue, McEneaney inappropriately challenges original PCRA counsel's ineffectiveness for the first time on appeal. *See generally*, *Commonwealth v. Henkel*, 90 A.3d 16 (Pa. Super. 2014) (*en banc*); 981 A.2d 875 (Pa. 2009); Pa.R.A.P. 302(a).

Moreover, our review of the record refutes new PCRA counsel's claim that original PCRA counsel abandoned McEneaney during the litigation of his PCRA petition. As noted above, original PCRA counsel twice amended McEneaney's PCRA petition. Although, in its responses, the Commonwealth twice complained of deficiencies in McEneaney's counseled pleadings, the Commonwealth briefly addressed the merits of McEneaney's ineffective assistance claims. Following proper Rule 907 notice, Judge Jenkins dismissed the McEneaney's PCRA petition as meritless. Thus, prior PCRA counsel did not abandon McEneaney during the litigation of his PCRA petition, and the PCRA court did not dismiss McEneaney's second amended PCRA petition as defective, but rather, dismissed the petition on its merits.[5]

As noted above, in order to preserve claims of original PCRA counsel's ineffectiveness, McEneaney had to raise them in response to the PCRA court's Rule 907 notice. **Henkel**, **supra**. McEneaney did not do so. New PCRA

---

[5] Nowhere in McEneaney's appellate brief does new PCRA counsel acknowledge the second amended petition. Moreover, given the fact that the PCRA court dismissed McEneaney's PCRA petition on its merits, new PCRA counsel's claim that the court should have allowed counsel to amend the petition fails.

counsel's raising nine additional claims of trial counsel's ineffectiveness for the first time in McEneaney's Rule 1925(b) statement is not sufficient; rather, McEneaney's only remedy is to seek relief in another subsequently filed PCRA petition. "A party cannot rectify the failure to preserve an issue by proffering it in response to a Pa.R.Crim.P. 1925(b) order." *Commonwealth v. Watson*, 835 A.2d 786, 791 (Pa. Super. 2003) (citation omitted).[6]

McEneaney's remaining issues were preserved below, and we therefore address them on their merits. To obtain relief under the PCRA premised on a claim that trial counsel was ineffective, a petitioner must establish, by a preponderance of the evidence, that counsel's ineffectiveness so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. *Commonwealth v. Johnson*, 966 A.2d 523, 532 (Pa. 2009). "Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner." *Id.* This requires the petitioner to demonstrate that: (1) the underlying claim is of arguable merit; (2) counsel

---

[6] Although we are aware of this Court's recent decision in *Commonwealth v. Shaw*, ____ A.3d ____ (Pa. Super. 2019) 2019 WL 2864262, we find it readily distinguishable. In *Shaw*, this Court concluded that Shaw's claim of PCRA counsel's ineffectiveness was not waived on appeal because prior PCRA counsel "abandoned the only claim [Shaw] had presented at the PCRA hearing by failing to include it in Shaw's Rule 1925(b) statement." *Id.* at * 6-8. Here, by contrast, except for the claims addressed *infra*, McEneaney did not preserve the remaining claims by raising them in the PCRA court.

had no reasonable strategic basis for his or her action or inaction; and (3) counsel's act or omission prejudiced the petitioner. *Id.* at 533.

As to the first prong, "[a] claim has arguable merit where the factual averments, if accurate, could establish cause for relief." *Commonwealth v. Stewart*, 84 A.3d 701, 707 (Pa. Super. 2013) (*en banc*). "Whether the facts rise to the level of arguable merit is a legal determination.'" *Id.* (citing *Commonwealth v. Saranchak*, 866 A.2d 292, 304 n.14 (Pa. 2005).

As to the second prong of this test, trial counsel's strategic decisions cannot be the subject of a finding of ineffectiveness if the decision to follow a particular course of action was reasonably based and was not the result of sloth or ignorance of available alternatives. *Commonwealth v. Collins*, 545 A.2d 882, 886 (Pa. 1988). Counsel's approach must be "so unreasonable that no competent lawyer would have chosen it." *Commonwealth v. Ervin*, 766 A.2d 859, 862-63 (Pa. Super. 2000) (citation omitted).

As to the third prong of the test for ineffectiveness, "[p]rejudice is established if there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *Stewart*, 84 A.3d at 707. "A reasonable probability 'is a probability sufficient to undermine confidence in the outcome.'" *Id.* (quoting *Commonwealth v. Rathfon*, 899 A.2d 365, 370 (Pa. Super. 2006).

Finally, when considering an ineffective assistance of counsel claim, the PCRA court "is not required to analyze these [prongs] in any particular order

of priority; instead if a claim fails under any necessary [prong] of the ineffectiveness test, the court may proceed to that [prong] first." *Commonwealth v. Tharp*, 101 A.3d 736, 747 (Pa. 2014) (citations omitted). In particular, when it is clear that the petitioner has failed to meet the prejudice prong, the court may dispose of the claim on that basis alone, without a determination of whether the first two prongs have been met. *Commonwealth v. Travaglia*, 661 A.2d 352, 357 (Pa. 1995).

In his second issue, McEneaney claims that the PCRA court erred in dismissing his claim that trial counsel was ineffective for failing to file a motion to suppress his statements made to the police. As this Court has summarized:

> [T]he failure to file a suppression motion under some circumstances may be evidence of ineffectiveness assistance of counsel. However, if the grounds underpinning that motion are without merit, counsel will not be deemed ineffective for failing to so move. The defendant must establish that there was no reasonable basis for not pursuing the suppression claim and that if the evidence had been suppressed, there is a reasonable probability that the verdict would have been more favorable.

*Commonwealth v. Watley*, 153 A.3d 1034, 1044 (Pa. Super. 2016) (citations omitted).

The Honorable Patricia H. Jenkins, who, as noted above, presided at McEneaney's jury trial, and who acted as the original PCRA court, found no merit to this claim given the overwhelming evidence of McEneaney's guilt:

> McEneaney, who was a minor at the time of his arrest, contends that trial counsel was ineffective for failing to suppress an inculpatory statement that he gave to police

- 11 -

officers after his arrest. His original PCRA petition alleges that the police tricked his step-grandfather into signing a *Miranda* waiver form without advising him of his right to consult with McEneaney. Whether or not this states a valid claim, the Court finds that McEneaney did not suffer prejudice. Even if this statement to police had been suppressed, the other evidence of his guilt was overwhelming.

Rule 907 Notice, 1/4/11, at 2 n.1. In his Rule 1925(a) opinion, the Honorable Richard M. Cappelli, to whom the case was reassigned, reinforced Judge Jenkins' conclusions. Judge Cappelli first discussed the applicable law and the circumstances surrounding McEneaney's statement:

> To safeguard an uncounseled individual's Fifth Amendment privilege against self-incrimination, suspects subject to custodial interrogation by law enforcement officers must be warned that they have the right to remain silent, that anything they say may be used against them in court, and that they are entitled to the presence of an attorney. *See Thompson v. Keohane*, 516 U.S. 99, 104, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995) (citing *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Juveniles, as well as adults, are entitled to be apprised of their constitutional rights pursuant to *Miranda*. *See In re Gault*, 387 U.S. 1, 57, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). If a person is not advised of his *Miranda* rights prior to custodial interrogation by law enforcement officers, evidence resulting from such interrogation cannot be used against him. *See Miranda*, 384 U.S. at 436, 444, 478-79, 86 S.Ct.1602; *Commonwealth v. Chacko*, 500 Pa. 571, 459 A.2d 311, 314-15 (1983). A person is deemed to be in custody for *Miranda* purposes when "[he] is physically denied his freedom of action in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by the interrogation." *Commonwealth v. Williams*, 539 Pa. 61, 650 A.2d 420, 427 (1994).
>
> Instantly, whether [McEneaney] knowingly, voluntarily and intelligently gave a statement to Upper Darby Police

detectives while in custody was not the subject of any pre-trial motion to suppress his statement. Although, according to portions of the record here [McEneaney] and his step-grandparent agreed to give the statement. It does not appear that the statement was the result of coercion or law enforcement officers overwhelming the will of [McEneaney's] resistance.

Law enforcement had already developed strong leads in the murder of [the victim] that led them to [McEneaney's] accomplice, [Andre Mark]. There were also witnesses to the attack who provided identification information. Law enforcement lawfully appeared at the residence of [McEneaney] with a search warrant. The murder weapon was retrieved from a hole in the ceiling above [McEneaney's] bed. Clearly, [McEneaney] observed all of this transpiring. [McEneaney] had in his possession a cut out copy of the news article declaring the victim of his stabbing attack had died. [McEneaney] and his "step-grandfather" were removed to Upper Darby Police headquarters where [McEneaney] was interviewed after agreeing to give the statement.

Also, it appears in the record that [McEneaney] does not suffer any pernicious intellectual deficit or insidious learning disability that would have prevented him from understanding the warning and implications of his statement to law enforcement. An interest adult, [McEneaney's] grandparent or step-grandparent, was present the entire time and also consented to the questioning.

PCRA Court Opinion, 1/10/19, at 6-7.

Judge Cappelli then agreed with Judge Jenkins' conclusion that McEneaney had not established prejudice:

Although it does appear in the record that trial counsel did not pursue any motion to suppress [McEneaney's] statement to law enforcement, in light of the other overwhelming evidence of [McEneaney's] guilt there was no prejudice, that is, the third prong, of the ineffectiveness analysis cannot be made out [in] this case.

- 13 -

> Specifically, even assuming *arguendo* that the claim of counsel's failure to file the suppression motion has arguable merit *AND* moreover that counsel lacked any arguable reasonable basis for failing to file a motion to suppress [McEneaney's] inculpatory custodial statements to law enforcement, the other evidence of his guilt was overwhelming as observed by [Judge Jenkins] in [her] **January 4, 2011** order dismissing [McEneaney's] PCRA that no material prejudice accrued. **See** [**Id.** n.1].

PCRA Court Opinion, 1/10/19, at 8.[7]

Our review of the record supports these conclusions. In arguing to the contrary, McEneaney does not develop how the failure of trial counsel to file a suppression motion prejudiced him in light of the other evidence supporting his conviction. Moreover, in his supporting argument for this ineffectiveness claim, McEneaney does not discuss the prejudice prong at all. **See Commonwealth v. Fears**, 86 A.3d 795, 804 (Pa. 2014) (explaining, "When an appellant fails to meaningfully discuss each of the three ineffectiveness prongs, he is not entitled to relief, and we are constrained to find such claims waived for lack of development") (citation omitted). Thus, for all of these reasons, McEneaney has not established that if the evidence had been suppressed, there was a reasonable probability that the verdict would have been more favorable. Therefore, his second issue fails.

In his third issue, McEneaney asserts that trial counsel was ineffective for failing to call an expert he had retained prior to trial to discuss the victim's

---

[7] In his Rule 1925(a) opinion, Judge Cappelli discussed the evidence presented against McEneaney in detail. **See** PCRA Court Opinion, 1/10/19, at 3-6.

violent propensities and how the victim's use of drugs and/or alcohol would have affected those propensities.

In order to establish that trial counsel was ineffective for failing to investigate and/or call a witness at trial, a PCRA petitioner must demonstrate that:

> (1) the witness existed; (2) the witness was available; (3) trial counsel was informed of the existence of the witness or should have known of the witness's existence; (4) the witness was prepared to cooperate and would have testified on appellant's behalf; and (5) the absence of the testimony prejudiced appellant.

*Commonwealth v. Hall*, 867 A.2d 619, 629 (Pa. Super. 2005) ((quoting *Commonwealth v. Bomar*, 826 A.2d 831, 856 (Pa. 2003). Here, the admissibility and scope of Dr. Saferstein's testimony was litigated prior to trial. Ultimately, trial counsel did not call him as a witness. Thus, only question is whether McEneaney satisfied the fifth factor, that is, whether the absence of Dr. Saferstein's testimony prejudiced him.

Judge Jenkins concluded that McEneaney could not establish prejudice, given the other evidence presented at trial:

> McEneaney alleges that trial counsel was ineffective for failing to present expert testimony that the [victim] had violent propensities, and that drug and alcohol use exacerbated his aggressiveness. This testimony, McEneaney argues, would have led the jury to believe that he was acting in self-defense. McEneaney's original and amended PCRA petitions do not include any affidavit or other document demonstrating that [the victim's] addictions fueled his aggressiveness. Therefore, the Court finds no

- 15 -

substantial basis for holding an evidentiary hearing on this subject. Moreover, the Court does not believe that expert testimony would have changed the outcome of the trial. The jury heard evidence about the [victim's] drug and alcohol use and his aggressive conduct, including (a) the [victim's] intoxication at the time of death (in particular, his BAC of .18%[;] (b) medication in his system such as Valium and methadone, and benzodiazepine[;] (c) the [victim's] strange conduct toward [McEneaney and Mark]; and (d) the [victim's] role in provoking the fight by "mooning" the defendants and swinging a shovel at them. Despite all this, the jury found McEneaney guilty. Expert testimony about the effect of intoxication on the [victim's] conduct would not have changed the verdict.

Rule 907 Notice, 1/4/11, at 2 n.1 (citations to record omitted).

After reviewing the trial record, Judge Cappelli again agreed with Judge Jenkins' conclusion. After reiterating the above comments by Judge Jenkins, Judge Cappelli explained:

To understand the conclusion that additional evidence of the victim's violent or aggressive or hostile [tendencies] would be inconsequential to the jury's finding that [McEneaney] committed first degree murder in the homicide of [the victim], reference is made to the [Judge Jenkins'] opinion on direct appeal wherein [she] stated: "[McEneaney], at the time less than 18 years of age and Andre Mark brutally beat a homeless man to death for the perverse thrill of taking an innocent person's life." ***See, 12/27/07, Trial Court Opinion.***

In actuality attempting to present evidence of the victim's violent tendencies could backfire even more drastically than it could help ameliorate [McEneaney's] criminal liability as such evidence could readily be viewed as blaming the victim for his own death where he was minding his own business rummaging through a dumpster when set upon by [McEneaney] and his accomplice who provoked and quickly escalated a verbal altercation into serious physical violence with the vicious repeated stabbing death of the [victim]. Under these circumstances, evidence such as is

suggested would likely be of little moment and tenuous at best to achieve its purported end. This conclusion is supported by the record and free of legal error. **Commonwealth v. Rainey**, 928 A.2d 215, 223 (Pa. 2007).

Therefore, [Judge Jenkins'] dismissal of this theory of relief without a hearing was proper and justified under the circumstances. [McEneaney's] appeal should be denied and dismissal of [McEneaney's] PCRA petition affirmed.

PCRA Court Opinion, 1/10/19, at 9.

We agree that McEneaney's third issue does not entitle him to relief. McEneaney does not proffer any basis upon which Dr. Saferstein's testimony would be admissible for any reason other than to bolster the credibility of McEneaney's own testimony. **See generally**, **Commonwealth v. Seese**, 517 A.2d 920, 922 (Pa. Super. 1989).

Indeed, McEneaney concedes as much in his brief. **See** McEneaney's Brief at 29-30 (asserting "Dr. Saferstein's testimony would have corroborated and greatly strengthened, [McEneaney's] and other witness' description of [the victim's] lack of caution and self-restraint. . . . had the jury heard Dr. Saferstein's testimony they would have been more likely to find that [McEneaney] had acted in self-defense). Once again, McEneaney had the opportunity to proffer such evidence at the April 18, 2017 PCRA hearing but failed to do so.[8] Given these circumstances, McEneaney's third issue fails.

---

[8] Although Dr. Saferstein's report does not appear in the certified record, our reading of the report reveals no discussion of the victim's "violent" propensities. We further note that, in response to the Commonwealth's motion *in limine*, Judge Jenkins had ruled that Dr. Saferstein would not be

In his fourth issue, McEneaney asserts that appellate counsel was ineffective for failing to appeal Judge Jenkins' pre-trial ruling that precluded the admission of a protection from abuse ("PFA") order granted in favor of the victim's sister against the victim. According to McEneaney, trial counsel unsuccessfully sought to introduce the PFA order in rebuttal to the Commonwealth's evidence of the victim's gentle nature.

"Questions regarding the admission of evidence are left to the sound discretion of the trial court, and the Superior Court, as an appellate court, will not disturb the trial court's rulings regarding the admissibility of evidence absent an abuse of that discretion." *Commonwealth v. Pukowsky*, 147 A.3d 1229, 1233 (Pa. Super. 2016). In her March 19, 2007 pre-trial order, Judge Jenkins concluded "[e]vidence of a 2003 [PFA] obtained against the victim has little or no probative value, which is exceeded by its potential for prejudice, and is therefore barred by Pa.R.E. 404."

In addressing McEneaney's ineffectiveness claim, Judge Jenkins found it meritless because the PFA order that a court had issued in 2003, three years before the victim's death, "was too attenuated to be relevant." Rule 907 Notice, at 2 n.1. In addition, Judge Jenkins concluded, "this proposed rebuttal

---

permitted to testify to his conclusion as to causation. *See* Order, 3/19/07, at 1; Report, 11/7/06, at 2 (concluding that the victim's "alcohol and drug induced state markedly reduced his capacity to take normal and prudent precautionary measures that would have avoided the occurrence of this incident. . . . The alcohol and drug intoxication of [the victim] must be considered a primary factor contributing to the occurrence of his fatal injuries arising out of this incident").

evidence would not have changed the verdict, since the jury already heard evidence about [the victim's] drug and alcohol use and aggressive conduct on the night of his death." ***Id.*** Once again, Judge Cappelli, agreed with Judge Jenkins' conclusions. ***See*** PCRA Court Opinion, 1/10/19, at 10.

After reviewing the evidence, we discern no abuse of discretion. McEneaney argues, "Admission of the PFA was essential to the defense because it would have shown that when under the influence of drugs and alcohol, [the victim] had a history of responding inappropriately with violence." McEneaney's Brief at 34. According to McEneaney, the victim's "prior propensity for violence under the influence of drugs and alcohol was directly relevant and probative as to whether he acted similarly in the case at bar." ***Id.*** He further asserts that he was prejudiced in that, "[b]ecause the jury did not have the PFA before it, they were denied key evidence in support of [McEneaney's claim] of self-defense." ***Id.*** at 35.[9]

We are not persuaded by McEneaney's contentions. In making his argument, he provides no details regarding the underlying PFA that a court granted in favor of the victim's sister three years prior to his death. In addition, McEneaney failed to call appellate counsel at the 2017 PCRA hearing.

---

[9] McEneaney also asserts that "the Commonwealth was not made to meet [its] burden of proving that [he] did no reasonably believe that he was in imminent danger if serious bodily injury from" the victim. McEneaney's Brief at 35. As McEneaney inappropriately raises this claim for the first time on appeal, we will not consider it further. ***See*** Pa.R.A.P. 302(a).

Nevertheless, given the overwhelming evidence of his guilt, McEneaney cannot establish that had appellate counsel raised this issue on appeal, he would have been afforded relief in the form of a new trial. Thus, McEneaney's fourth ineffectiveness claim fails.

In his fifth issue, McEneaney's claims that trial counsel was ineffective for failing to object to alleged prosecutorial misconduct. Our standard of review is well settled:

> [P]rosecutorial misconduct does not take place unless the unavoidable effect of the comments at issue was to prejudice the jurors by forming in their minds a fixed bias and hostility toward the defendant, thus impeding their ability to weigh the evidence objectively and render a true verdict. . . . In reviewing a claim of improper prosecutorial comments, our standard of review is whether the trial court abused its discretion. When considering such a claim, our attention is focused on whether the defendant was deprived of a fair trial, not a perfect one, because not every inappropriate remark . . . constitutes reversible error.

*Commonwealth v. Noel*, 53 A.3d 848, 858 (Pa. Super. 2012) (citations omitted). "Prosecutorial misconduct, however, will not be found where the comments were based on evidence or proper inferences therefrom or were only oratorical flair." *Commonwealth v. Harris*, 884 A.2d 920, 927 (Pa. Super. 2005) (citation omitted). In order to evaluate whether comments were improper, we must look to the context in which they were made. *Id.*

According to McEneaney, the Commonwealth first committed prosecutorial misconduct during its opening statements to the jury. As our Supreme Court has summarized:

- 20 -

> The principles applicable to such a claim are well established. Remarks in a prosecutor's opening statement must be fair deductions from the evidence which he in good faith plans to introduce and not mere assertions designed to inflame the passions of the jury. The prosecution is not, however, required to prove conclusively all statements made during the opening [statement]. As long as there is a good faith and reasonable basis to believe that a certain fact will be established, reference may properly be made to it during the opening [statement]. Even if an opening [statement] is improper, relief will be granted only where the unavoidable effect is to so prejudice the finders of fact as to render them incapable of objective judgment.

**Commonwealth v. Jones**, 610 A.2d 931, 938-39 (Pa. 1992) (citations omitted). McEneaney further asserts that by attempting to rebut these comments during his closing, trial counsel actually exacerbated the prejudice because the Commonwealth, by responding to trial counsel's comments, actually repeated its earlier characterization of his conduct.

When read in context, the opening remarks to which McEneaney claims trial counsel should have objected are as follows:

> Ladies and gentleman of the jury on March 24th of 2006, almost a year ago today, [the victim] was rummaging [through] a trash dumpster near the Bishop Hill apartments in Clifton Heights, Delaware County. He was minding his own business in a quiet somewhat secluded area just off of Baltimore Pike where he sat in the Bishop Hill apartments. And at around 8:00 a.m. that night, 8:00 p.m., he encountered two individuals who would brutally end his life. Two individuals who murdered [the victim] are sitting right here in the Courtroom today. Christopher McEneaney and Andre Mark. They're the two individuals who encountered [the victim] as he . . . rummaged through that dumpster. McEneaney and Mark stalked [the victim] on that evening ***like two hunters that were stalking their prey.*** Like they were killing for sport. When they first encountered him in the dumpster they started to harass him. They were

screaming at him, throwing rocks at him. [The victim] yelled back and then he mooned them. As we come to know mooning means pulling his pants down in a gesture back at them. They became enraged and continued the harassing of [the victim]. [The victim] got a shovel at some point out of the truck for his own protection and [McEneaney and Mark] started to pursue him. They pursued him in front of the dumpster that he was originally rummaging in to another dumpster where [the victim] went to hide behind, again for his own protection, hide behind another dumpster. And at some point [McEneaney and Mark] continued their [pursuit] into a field what is known as Saint Eugene's field there, again near the Bishop Hill apartments. Once they got into the field Andre Mark began punching [the victim] in the face and then Christopher McEneaney at some point began to stab him. He stabbed - - Christopher McEneaney stabbed [the victim] not once, not twice, not three times, not four times, not five times not six times, not seven times, but eight times Christopher McEneaney stabbed [the victim]. In his own words, the victim didn't seem to be feeling these stabbings, [McEneaney] took the shovel from [the victim] and slammed him over the top of the head with it three times. [The victim bled] to death there in that field.

N.T., 3/20/07, at 115-17 (emphasis added).

Unlike McEneaney, Mark's counsel raised this same claim of prosecutorial misconduct in his direct appeal. Although Judge Jenkins correctly found this claim waived for lack of a specific objection, she nevertheless found the claim devoid of merit. Judge Jenkins explained:

Moreover, the Court agrees with the Commonwealth that the prosecutor's statement was within the boundaries of oratorical flair. Our appellate courts have ruled that similar statements comparing criminals to hunters and victims as prey are permissible. ***Commonwealth v. Miller***, 897 A.2d 1281m 1291 (Pa. Super. 2006) (Commonwealth's opening and closing statements concerning use of noun "predator" and verb "preys" to describe defendant did not warrant new trial; defendant asked her victim for money and when refused, came back with hammer and knife and bludgeoned

and stabbed her to death, slitting her throat, and in the days that followed, she returned to the victim's apartment and stole checks, credit cards, and victim's car, each time walking past victims corpse sitting at kitchen table, such that defendant's actions could reasonably termed predatory); **Commonwealth v. Miles**, 545 Pa. 500, 511, 681 A.2d 1295, 1300 (1996), *cert. denied*, 520 U.S. 1187, 117 S.Ct. 1472, 137 L.Ed.2d 684 (1997) (concluding prosecutor's comparison of defendant's actions to the hunting style of "animals of prey" was not improper); **Commonwealth v. Van Horn**, 797 A.2d 983 (Pa. Super. 2002) (holding prosecutor's characterization of victim as prey was within the limits of proper oratorical flair). Based on the evidence described above, the hunter-prey simile is as applicable here as it was in **Miller**, **Miles** and **Van Horn**.

Trial Court Opinion, 12/27/07, 14-15.

In Rule 907 Notice to McEneaney's PCRA petition, Judge Jenkins reiterated this conclusion: "Prosecutors have the right to use proper oratorical flair when arguing their case as long as arguments are grounded on sufficient evidence. Given the brutality of the defendants' assault, the prosecutor's [opening and] closing argument was permissible." Rule 907 Notice, 1/4/11, at 2 n.1. In his Rule 1925(a) opinion, Judge Cappelli likewise concluded that the statements by the prosecutor emphasized above "did not deny [McEneaney] a fair trial or result in the fixing of bias or hostility in the minds of the jurors such that the jury was clouded from evaluating the evidence but instead were merely a valid exercise of oratorical flair and fair comment on the evidence in this case." PCRA Court Opinion, 1/10/19, at 12.

We agree that the challenged comments were reasonably based on the evidence, and inferences therefrom, as presented by the Commonwealth. In

arguing to the contrary, McEneaney first contends "[c]omparing [him] to a predator was both highly inflammatory and completely inapposite to [McEneaney's] claim of self-defense." McEneaney's Brief at 37. This claim is disingenuous. We are aware of no authority that requires the Commonwealth to tailor its comments to any potential defense a criminal defendant may raise at trial.

In addition, we find McEneaney's supporting arguments undeveloped. He first distinguishes the facts of **Van Horn**, **supra**, because it involved a sexual offense against a minor. Although McEneaney cites a number of cases wherein the appellate court found references to defendants as "animals" or a "pack of wolves" to be prejudicial, **see** McEneaney's Brief at 39-40, he does not develop adequately their similarity to the facts in this case.

McEneaney avers "[t]he instant case is on all fours" with **Commonwealth v. Fears**, **supra**, a capital murder case involving the death and sexual assault of a twelve-year-old boy. We disagree for several reasons. In **Fears**, during his closing **penalty** phase argument, the prosecutor referred to Fears as "a hunter, a predator" and stated, "there's no mitigation in this case." **Fears**, 86 A.3d at 819. Here, McEneaney was not facing the death penalty. Moreover, Fears had waived his right to proceed before a jury during the penalty phase of his trial. In addressing Fears' claim of prosecutorial misconduct our Supreme Court first pointed out that, in making his argument, Fears mistakenly asserted that the challenged comments "misdirected the jury"—a claim which the Court suggested was the result of "'cut and paste'

written advocacy," since Fears' death penalty phase was argued before the trial court as fact finder. *Id.* The Court then cited the well-settled presumption that the trial court, when acting as fact finder, "can and will disregard prejudicial evidence." *Id.* (citation omitted). Our Supreme Court concluded that Fears' claim of prejudice was undeveloped. *Id.* Although McEneaney argues that our Supreme Court in *Fears* "found that similar comments by the prosecutor that Fears was 'a hunter, a predator' would have been prejudicial had Fears had a jury trial," McEneaney's Brief at 37-38, we find no such statement in the High Court's two-paragraph discussion of the alleged misconduct.

After careful review, we agree with the Commonwealth that, considering all the facts and circumstances surrounding the victim's death in this case, our Supreme Court's decision in *Miles*, *supra*, is most similar. In *Miles*, another capital murder case, three co-defendants acted in concert to rob the victim outside a store in a shopping mall—one grabbed the victim's sneakers, while another shot at the victim, and a third kept the victim's friend from coming to his aid. The robbery victim's friend was also shot and died at the scene. In his closing to the jury, the prosecutor stated:

> [D]id you ever see those nature shows, that nature shows where the show animals of prey? . . . you see them chasing a de[e]r [sic], innocent animal, a[n] animal which serves as their prey. They rarely do it alone. Rarely does one attack by itself. There's one that jumps up and snaps the neck of the de[e]r with one bite and another one that jumps up and tears the flesh of the slain off with one bite. They all can join together. They snip and tug and bite and snap until

> they get what they're after. They all share. They all act together. That's what you saw here.

***Miles***, 681 A.2d at 1302.

In rejecting a claim of prosecutorial misconduct for comparing the acts of the co-defendants to animals hunting for their prey, our Supreme Court explained:

> Our Court has held that as long as there is a reasonable basis in the record for the comments, we will permit vigorous prosecutorial advocacy. . . . The prosecutor's comments in this case were reasonably based upon the record that the defendants acted in concert when attacking [the victims]. Here we find that the prosecutor's comments could not have prejudiced the jury to the point of thwarting their objectivity.

***Id.*** (footnote omitted). In addition, our Supreme Court conducted a harmless error analysis and determined that, "the properly admitted evidence of Miles' guilt, including his confession, his co-defendant's statements and eyewitness testimony, is overwhelming." Thus, our Supreme Court in ***Miles***, found that even if error had occurred, it was harmless beyond a reasonable doubt, and Miles was not entitled to a new trial.

Here the prosecutor's comments, although using the words "hunter" and "prey", did not provide the vivid animal comparison as used in ***Miles***. Nevertheless, as in the ***Miles*** decision, we agree that such references were reasonably based upon the Commonwealth's evidence that McEneaney and Mark pursued and ultimately killed the victim. ***Harris***, ***supra***. Additionally, given the overwhelming evidence of guilt, even if such comments were

improper, McEneaney could not establish prejudice to the degree that would warrant a new trial. *Miles*, *supra*.

Finally, the Commonwealth's reiteration of similar comments during its closing argument to the jury were made in response to trial counsel's attempt during his closing to convince the jury that the evidence presented actually contradicted the Commonwealth's characterization of McEneaney's conduct. Rather than exacerbate the potential for prejudice, counsel's argument established a clear jury question regarding McEneaney's actions. *See* N.T., 3/23/07, at 7-9. The fact that the jury made this decision in the Commonwealth's favor does not entitle McEneaney to post-conviction relief. Because prosecutorial misconduct did not occur, counsel was not ineffective for failing to object. "[C]ounsel cannot be deemed ineffective for failing to raise a meritless claim." *Commonwealth v. Spotz*, 896 A.2d 1191, 1211 (Pa. 2006). Thus, for all of the foregoing reasons, McEneaney's fifth issue fails.

In his sixth and final issue, McEneaney "asserts that his trial counsel was ineffective for failing to object and move to replace Juror Number 3 or for a mistrial when the juror appeared to be sleeping and/or not paying attention throughout the trial." McEneaney's Brief at 40. This issue arose during trial after Judge Jenkins concluded her jury charge and was raised by the prosecutor. *See* N.T. 3/23/07, at 102-05. In dismissing McEneaney's claim, Judge Jenkins, who, as noted above, presided at McEneaney's trial, stated that she "watched the jury closely during trial and did not see any juror sleeping."

Rule 907 Notice, 1/4/11, at 2 n.1. In his Rule 1925(a) opinion, Judge Cappelli noted that his review of the trial transcript revealed "no further delineation of whether the juror was actually sleeping for any portion of the case or jury charge[.]" PCRA Court Opinion, 1/10/19, at 16.

Given the state of the record, although McEneaney now suggests further actions that trial counsel should have taken to determine whether the juror was asleep or inattentive, he cannot establish prejudice. As stated by the Commonwealth, "The record was not developed during trial to the point where we will ever know whether the juror was sleeping, nodding off, paying close attention or otherwise." Commonwealth's Brief at 48. Lacking the present ability to provide a factual basis for his ineffectiveness claim, McEneaney's sixth issue fails.

Because McEneaney's claims of trial counsel's ineffectiveness are meritless, we affirm the PCRA court's order denying McEneaney post-conviction relief.

Although we reach this disposition, we address *sua sponte* the legality of McEneaney's life without parole sentence in light of **Miller v. Alabama**, 567 U.S. 460 (2012), and **Montgomery v. Louisiana**, ___ U.S. ___, 136 S.Ct. 718 (2016). **See Commonwealth v. Watley**, 81 A.3d 108, 118 (Pa. Super. 2013) (explaining that because the legality of a sentence is non-waivable and may be addressed by this Court *sua sponte*).

In **Miller**, the United States Supreme Court held, "that mandatory life without parole [sentences] for those under the age of 18 at the time of their

crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'" ***Miller***, 567 U.S. at 465. Regarding the issue of whether the ***Miller*** holding applied retroactively to juveniles sentenced to life in prison without the possibility of parole prior to its ruling, the High Court in ***Montgomery v. Louisiana***, ___ U.S. ___, 136 S.Ct. 718 (2016), held, "***Miller*** announced a substantive rule of constitutional law. Like other substantive rules, ***Miller*** is retroactive." ***Montgomery***, 136 S.Ct. at 734. Thus, in McEneaney's case, although he was sentenced to life in prison without parole in 2007, because he was sixteen at the time of his crime, he is entitled to resentencing pursuant to ***Miller*** and ***Montgomery***.

In sum, although we affirmed the PCRA court's order denying him post-conviction relief, we vacate McEneaney's judgment of sentence and remand resentencing.

Order denying post-conviction relief affirmed. Judgment of sentence vacated. Case remanded for resentencing. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/11/19

- 29 -